IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARSHALL KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.   14-cv-0532-MJR-SCW |
| ) | |
| BYRON E. LAWRENCE and ) | |
| AMY HARRIS (Executor of the ) | |
| Estate of WILLIAM HARRIS), ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

**I.    INTRODUCTION**

In May 2014, Marshall King filed a pro se civil rights complaint in this Court under 42 U.S.C. 1983.   Then confined at Pinckneyville Correctional Center, King named three Defendants -- Warden Donald Gaetz and correctional officers Byron Lawrence and William Harris.  King alleged that he was subjected to deplorable conditions of confinement and deprived of due process. Specifically, King alleged that he was housed in a cell that contained insects, dust in the ventilation, stains on the wall, and a filthy toilet and sink; that he was denied cleaning supplies despite multiple requests; and that Warden Gaetz violated due process in connection with a May 2012 disciplinary hearing.

On threshold review under 28 U.S.C. 1915A, the undersigned dismissed the due process claim against Gaetz but found that King had stated a colorable claim for unconstitutional conditions of confinement in violation of the Eighth Amendment to the Constitution against Lawrence and Harris (Doc. 8, p. 3).

The case is now before the Court on a June 3, 2016 motion for summary judgment, filed with supporting memo (Docs. 86 and 87) by Lawrence and Harris.[1] King filed a brief in opposition (Doc. 89). Provided with the materials supporting the motion is the transcript of Plaintiff King's deposition, taken on January 29, 2016 at Western Correctional Center, where King is now incarcerated (Doc. 87-1). Provided with the brief opposing summary judgment is King's sworn declaration (Doc. 89-1), an affidavit from a former Pinckneyville Correctional Center inmate who was housed on R4-D Wing during parts of 2011 and 2012 (Doc. 89-2), and Defendants' answers to King's interrogatories (Doc. 89-1). For the reasons stated below, the Court partially grants and partially denies the motion.

II.     SUMMARY OF ALLEGATIONS AND EVIDENCE

Marshall King was housed at Pinckneyville Correctional Center from June 25, 2010 to December 3, 2014. He was housed in the cell at issue in this case, cell R4-D-62, from June 4, 2011 to August 18, 2013 (Doc. 87-1, pp. 11, 13, 19). When King was placed in the cell, the vent was fully covered with dust, and the inside of the toilet bowl was encrusted with feces and urine (*Id*. p. 14-15). The toilet and sink did function (*Id*., p. 18). The cell had flying insects which bit King's arms, chest, and legs (*Id*., p. 15). The bugs were mostly mosquitos, June bugs, or ladybugs (*Id*., p. 16). King was on the top bunk, and at night the insects would swarm the light and bite him (*Id*.). There were spider

---

[1] In April 2015, Amy Harris (the executrix of William Harris' estate) was substituted for Defendant William Harris, who had passed away (*see* Doc. 51). In recounting the facts and allegations, the Court refers to *William* Harris.

webs in the corners of the cell and under the bunks (*Id.* at p. 17).

An exterminator also mentions ants and mice. The comment section of the exterminator notes for the prison (not necessarily King's cell) indicates the presence of ants in February through June 2012 and again in September 2012 (Doc. 89-3, pp. 28-35). Mice were noted on February 15, 2012 (Doc. 89-3, p. 28).

King testified that he was kept in the cell 22 hours a day (Doc. 87-1, p. 18). He was able to leave his cell three times a day for meals until the prison went to a two-meal schedule (Doc. 87-1, pp. 24-25). He went to the prison yard three times a week and went to the law library weekly (*Id.* at pp. 25-26). Although the dayroom was open for 45 minutes in the morning and 90 minutes in the evening, King would only go to the dayroom during one of those periods (*Id.*, p. 27; Doc. 89-1, p. 19).

King experienced similar unsanitary conditions in another cell, R4-D-64, through 2014 when the prison started passing out cleaning supplies, at least partly due to King's complaints (*Id.*, pp. 19-20; Doc. 89-1, p. 4).

As a result of these dirty conditions, King testified that he experienced medical issues. King claims that he developed a cough and allergies from the dusty vents and developed inflammation, scars, and pock marks on his arms, leg, and chest as a result of the bug bites (Doc. 89-1, p. 3). King admitted, however, that a nurse diagnosed the inflammation as psoriasis and gave him cream which helped (Doc. 87-1, p. 35, 41).

King also testified that he had mental suffering due to aggravation from the guards refusing to distribute cleaning supplies (*Id.*, pp. 36-37). King testified that the

officers just wanted to hang out in the foyer all day and not be bothered by the inmates; they just ignored the inmates (*Id.*). King stated that there were outbreaks of staph and MRSA in the prison which King believes were due to the cells not being clean. King testified that *he* did not have any of those conditions (Doc. 89-1, p. 4; Doc. 87-1, p. 47).

King testified that when he first arrived in the cell, for the first two days he asked for cleaning supplies daily (Doc. 87-1, pp. 22, 35). He made the request to the wing officer while in the day room (*Id.*, pp. 22, 36). Throughout the time he was in the cell, King continued to request cleaning supplies, but he eventually gave up (*Id.*). He was told by the counselor that cleaning supplies were passed out on the weekends, but King never had access to supplies (*Id.*, p. 23; Doc. 89-2, p. 39). Records from the prison indicate that the assistant warden ordered that cleaning supplies be made available to inmates for cleaning their cells every Saturday starting in September 21, 2012 (Doc. 89-1, p. 16). Inmate porters also had access to cleaning supplies, but King testified that they only cleaned the common areas -- not the individual cells (Doc. 87-1, p. 23).

While King was in R4-D-62, maintenance personnel came and vacuumed the dust out of the vent and called an exterminator for the insects (Doc. 89-1, p. 21). An exterminator arrived and sprayed for insects (*Id.*). The exterminator came once while King was in cell D-62 and once while he was in cell D-63 (*Id.*, p. 22). King stopped getting insect bites for a while after the exterminator came (Doc. 87-1, p. 32). King said the maintenance person and exterminator only came after King voiced complaints and filed grievances (Doc. 89-1, p. 4)

King testified that he spoke to Defendant Harris on one occasion on a weekend and asked for cleaning supplies (Doc. 87-1, p. 39). This was after King received a counselor's response saying that cleaning supplies were passed out on weekends, so King checked with Harris about the cleaning supplies (*Id.*, pp. 39-40, 50). Harris said that he was not passing out cleaning supplies and that he could not move King to a different cell (*Id.*). This conversation took place while Harris was in the dayroom on the 7-to-3 shift (*Id.*). Harris did not see King's cell (*Id.*, p. 41). King showed Harris his bug bites but did not ask Harris for medical attention for the bites, just cleaning supplies (*Id.*).

King testified that he spoke with Defendant Lawrence, who was the primary wing officer Monday through Friday, at least four or five times (Doc. 87-1, p. 42, 51). King eventually stopped talking to Lawrence because Lawrence had an attitude (*Id.*). The first time King spoke with Lawrence about cleaning supplies, Lawrence just looked at King strangely (*Id.*, p. 43). King repeatedly asked Lawrence for cleaning supplies in the following days and Lawrence responded, as King described it, flippantly (*Id.*, p. 43; Doc. 89-1, p. 3). King did not recall the exact words that Lawrence used to deny cleaning supplies (*Id.*, p. 43). King specifically told Lawrence that he wanted to clean the sink and toilet in his cell, because the toilet had urine and feces on the inside and the sink had calcium stains (*Id.*). King tried to show Lawrence his cell, but Lawrence made it clear that he did not want to talk to King (*Id.*, pp. 44-45). King later testified that Lawrence saw his cell (*Id.*, p. 51). The first two times King spoke to Lawrence were about a week apart. King spoke to Lawrence three more times after that. King did not

recall exactly how far apart those conversations were, but they took place over one to two months (*Id.*, pp. 46-47).

### III. APPLICABLE LEGAL STANDARDS

#### A. <u>Summary Judgment</u>

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011)**, *citing* FED. R. CIV. P. 56(a). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986)**, *quoting* FED R. CIV. P. 56(e)(2). A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.**

In ruling on a summary judgment motion, the Court construes the facts and all

reasonable inferences in favor of the nonmoving party. *Ault v. Speicher*, **634 F.3d 942, 945 (7th Cir. 2011).**

      B.    <u>**Conditions of Confinement**</u>

The Eighth Amendment to the United States Constitution requires a minimum standard for treatment of prisoners, including humane conditions of confinement. *Farmer v. Brennan*, **511 U.S. 825, 832 (1994)**, *citing Helling v. McKinney*, **509 U.S. 25, 31, (1993).** Inmates must be provided with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* **(citations omitted).**

> As the United States Court of Appeals explained recently:
>
> The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,'" and (2) where prison officials are deliberately indifferent to this state of affairs. *Farmer v. Brennan*, 511 U.S. 825, 834…. We have identified several situations that meet this demanding test, including lack of heat, clothing, or sanitation. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)….
>
> An adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem.

*Gray v. Hardy*, **-- F.3d --, 2016 WL 3457647, \*2 (7th Cir. June 24, 2016).**

A constitutional challenge to prison conditions requires the court to do a two-part examination. *Townsend v. Fuchs*, **522 F.3d 765, 773 (7th Cir. 2008).** First, the court examines whether the plaintiff has shown that the conditions were sufficiently serious

that the correctional official's act or omission resulted in the denial of "the minimal civilized measure of life's necessities."  *Id., quoting Farmer*, **511 U.S. at 835.**  If the plaintiff successfully passes this threshold (establishes that the conditions were sufficiently serious), then the court examines whether the correctional official acted with deliberate indifference to those conditions.  *Id., quoting Wilson v. Seiter*, **501 U.S. 294, 302 (1991), and** *Whitman v. Nesic*, **368 F.3d 931, 934 (7th Cir. 2004).**  *See also Grieveson v. Anderson*, **538 F.3d 763, 776 (7th Cir. 2008).**

To prove deliberate indifference, the plaintiff must show that "the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measure to address it."  *Townsend*, **522 F.3d at 773.**  To prevail on a condition of confinement/deliberate indifference claim, it is not enough for the plaintiff to show that a correctional official acted negligently or should have known about the risk at issue.  *Id., citing Pierson v. Hartley*, **391 F.3d 898, 902 (7th Cir. 2004).**

IV.   ANALYSIS

   A.   <u>**Insects and Dusty Air Vents in Cell**</u>

As to the insects and the dust in the air vents, Plaintiff has not shown deliberate indifference on the part of either Lawrence or Harris.  The evidence shows that maintenance did vacuum out the vent in King's cell after King wrote a grievance (Doc. 89-2, p. 39-40).  Maintenance then added his cell to the list to be sprayed for bugs and insects (*Id.*).  Lawrence indicated in his response to interrogatories that King could submit a request directly to the maintenance department (Doc. 89-1, p. 10).  There is no

indication in the record that King put in a maintenance request or specifically asked either Defendant for maintenance on the vents. The only evidence regarding his dusty vent is in King's May 22, 2012 grievance, and maintenance was sent to his cell after that grievance was filed.

Plus, King has offered nothing more than conclusory allegations that the dust caused his respiratory distress and allergies. *See Vasquez v. Frank*, **290 Fed. App'x 927, 929 (7th Cir. 2008),** *citing Dixon v. Godinez*, **114 F.3d 640, 645 (7th Cir. 1997).** There are no medical records or any other evidence to substantiate King's claims that he developed a respiratory condition due to the dusty vents.

King has not shown, and the record does not contain any evidence, that either Defendant was deliberately indifferent to the air vent issue. Nor is there any evidence that either Lawrence or Harris was deliberately indifferent to the insect problem in King's cell. King testified that he only asked Harris for cleaning supplies on one occasion. Although King showed Harris the rash on his arms and legs, there is no indication he told Harris they were from an insect infestation, and King acknowledges that the nurse diagnosed the rash as psoriasis (not insect bites). King did testify that he told Lawrence about the bug problem four or five times, and showed Harris his arms and legs (with what he said were bug bite marks). However there is no evidence that Harris or Lawrence was responsible for scheduling exterminators for the prison.

Moreover, King's cell was sprayed for bugs, as he acknowledged in his deposition. The records from Pinckneyville also indicate that the exterminator sprayed

monthly at the prison (Doc. 89-3, p. 28-35). While it is unclear if the exterminators specifically sprayed King's cell every time, the exterminators were present and spraying on at least a monthly basis. And King's bites would stop after the exterminator came. That some bugs remained after the exterminator sprayed does not establish deliberate indifference *by Defendants*. The Court finds no evidence of deliberate indifference as to either Defendant stemming from the insects in King's cell.

### B. Dirty Condition of the Cell (Toilet/Sink/Walls)

Turning to King's request for cleaning supplies as to the dirty condition of his cell, the record shows that King was housed in a cell with saliva and semen stains on the wall, a toilet bowl encrusted with urine and feces, and a sink with calcium build-up. King was housed in this cell and another like it for approximately *two years*. Defendants point out that both the sink and toilet functioned during the entire period, and the condition of the cell did not get any worse while King was there. But King was not able to clean his cell for that entire period. While Defendants argue that these conditions do not constitute a sufficiently serious deprivation, for purposes of this motion (construing the evidence in the light favorable to King), the Court finds that these conditions pass the "sufficiently serious" threshold. ***See Wheeler v. Walker*, 303 Fed. App'x 365, 368 (7th Cir. 2008) (collecting cases).**

Certainly, the feces-encrusted toilet which King was required to use and, necessarily, was in close proximity to at all times in his cell, is an inhumane condition. King testified that he told Defendants about the conditions and asked for cleaning

supplies to address the problems. King has demonstrated a sufficiently serious condition.

The Court next considers whether King has shown that either Lawrence or Harris was deliberately indifferent to that condition. King points to Defendants' refusal to give him cleaning supplies. The issue is whether there is enough evidence for a jury to find that Defendants were deliberately indifferent in denying King cleaning supplies.

**(1)** *Defendant Harris*

King has not shown deliberate indifference by Defendant Harris. King testified that he spoke to Harris one time, while he was in the dayroom on a Saturday. King asked Harris for cleaning supplies, after a counselor had responded to a grievance by saying that cleaning supplies were passed out on Saturdays. Harris told King that he was not passing out cleaning supplies and that he could not move King to another cell.

King admits that this is the only occasion that he spoke to Harris and that he did not show Harris his cell. To prevail on a deliberate indifference claim, an inmate must show that the correctional official knew of a substantial risk harm *and* disregarded it. There is no evidence that – based on one conversation in the dayroom – Harris was aware that King's cell was in a condition to deprive him of his basic life necessities and then failed to take any reasonable measure to address it. Thus, the Court finds that Harris is entitled to summary judgment on this claim.

**(2)** *Defendant Lawrence*

The Court reaches a different conclusion as to Defendant Lawrence. The record

reveals that King told Lawrence on multiple occasions that he wanted or needed supplies to clean his cell. He told him that the toilet was encrusted in urine and feces and that the sink had calcium stains (Doc. 87-1, p. 43). King testified that he told Lawrence about the conditions *while Lawrence was at King's cell.* Lawrence did not come in the cell to look at the conditions (*Id.*, p. 44-45). Lawrence refused to provide any cleaning supplies and acted "flippant" towards King (*Id.,* p. 43). While Defendant Lawrence argues that these conversations did not put him on notice about the inhumane conditions of King's cell, King testified that he spoke to Lawrence on multiple occasions and described the conditions in detail (Doc. 89-1, p. 3).

King submitted a memorandum from the assistant warden issued in 2012 stating that all inmates were to be given access to cleaning supplies on Saturdays. King testified that he was never provided with cleaning supplies and that his cell was not cleaned until 2014, when that policy was finally enforced (Doc. 89-1, p. 14). Simply put, the record suggests that King told Lawrence of the state of his cell, that King told Lawrence that he needed cleaning supplies, and that King refused to provide them.

Lawrence stated in response to King's interrogatories that inmates were provided with cleaning supplies on a daily basis and that inmates were never denied brooms or mops. Lawrence did not raise that point in his summary judgment motion but it is supplied in an attachment to King's response (Doc. 89-1, p. 11). However, King's testimony to the contrary clearly puts this point in dispute. Resolving reasonable inferences in King's favor, the Court finds evidence from which a jury could determine

that Lawrence was deliberately indifferent to King's serious cell condition. This precludes summary judgment for Lawrence on this claim.

Finally, Lawrence is not entitled to qualified immunity. The right to a cell that "meets contemporary requirements of minimal decency" is clearly established, **Wheeler, 303 Fed. App'x at 368**, and there are issues of fact here as to whether Lawrence was deliberately indifferent to King's complaints of the inhumane cell condition, a condition King testified lasted for over two years. Like the inmate in *Gray*, **2016 WL 3457647, \*4**, King has demonstrated a triable issue of fact as to the conditions he faced, Defendant Lawrence's deliberate indifference thereto, and the harm King suffered as a result. Accordingly, King's claim against Lawrence will proceed.

V.   CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Doc. 86) as follows. The motion is <u>granted</u> in that Defendant Harris is entitled to summary judgment on all of King's condition of confinement claims. No claims remain against Defendant Harris. The Clerk of Court shall enter judgment in favor of Harris and against King at the close of the case. The motion is also <u>granted</u> in that Defendant Lawrence is entitled to summary judgment on King's condition of confinement claim based on the insect infestation and dusty vents.

The motion is <u>denied</u> in that genuine issues of material fact preclude summary judgment for Lawrence on the condition of confinement claim based on the filthy conditions of the cell (i.e., the toilet, sink, walls) and Lawrence's deliberate indifference

thereto.   That claim remains for trial.

The final pretrial conference shall proceed before Judge Williams on September 15, 2016, as scheduled.   Jury trial remains set October 17, 2016 at 9:00 a.m. before the undersigned.

IT IS SO ORDERED.

DATED August 11, 2016.

                                         s/ *Michael J. Reagan*
                                         Michael J. Reagan
                                         United States District Judge